IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

JULIE M. JOKI,

        Plaintiff,

v.

ROGUE COMMUNITY COLLEGE, et al.,

        Defendants.

No. 1:08-cv-849-PA

**OPINION AND ORDER**

**PANNER, J.**

    Plaintiff Julie M. Joki was an instructor at defendant Rogue Community College (RCC) from 1994 until she resigned in 2006. Plaintiff brought this action alleging she was discriminated against because of her gender. She asserted claims under Title VII, Oregon statutes, and 42 U.S.C. § 1983 against RCC, RCC's president, and other faculty members.

    This action is here on remand from the Ninth Circuit. I

1 - OPINION AND ORDER

previously granted Defendants' motions for summary judgment, concluding Plaintiff's claims were barred by statutes of limitation. See Joki v. Rogue Cmty. Coll., 2012 WL 1354540 (D. Or. 2012) (Joki I). The Ninth Circuit affirmed summary judgment on the claims under Title VII and state law, but reversed and remanded on the equal protection claim under 42 U.S.C. § 1983, concluding the claim was timely. Joki v. Rogue Cmty. Coll., 544 F. App'x 679 (9th Cir. 2013) (Joki II).

Defendants now move for summary judgment on the equal protection claim, which is the only remaining claim. I deny the motion as to defendants Verne Underwood and Galyn Carlile, and otherwise grant the motion.

**PRELIMINARY ISSUES**

**I. Defendants May File a Successive Motion for Summary Judgment**

Plaintiff argues Defendants should be barred from filing the motion for summary judgment because the dispositive motion deadline expired years ago. In response, Defendants move to extend the dispositive motion deadline.

This court may allow a party to file a successive motion for summary judgment. See Hoffman v. Tonnemacher, 593 F.3d 908, 911-12 (9th Cir. 2010). The circumstances here favor allowing Defendants to file this motion. In ruling that the statutes of limitations barred Plaintiff's claims, this court did not address the merits of Plaintiff's claims. Defendants' current motion for

summary judgment, which addresses the merits of the equal protection claim, promotes judicial efficiency, and will not improperly prejudice Plaintiff.

## II. The Ninth Circuit Mandate Does Not Bar Defendants' Motion

Plaintiff argues the Ninth Circuit's rulings on appeal bar Defendants from filing this motion for summary judgment. Plaintiffs cite the following paragraph from the Ninth Circuit's majority opinion:

> Viewed in context and in the light most favorable to Joki, as we are required to do, there is a triable issue of fact regarding whether [Verne] Underwood's and [Galyn] Carlile's actions were part of a hostile work environment created by the otherwise time-barred conduct and continuing into the limitations period. Our task is to determine whether these acts are part of preexisting actionable hostile work environment. These incidents were close in time to one another, and in light of the prior allegedly discriminatory conduct by Underwood and Carlile, we cannot say that a trier of fact could not find that these two acts were part of an actionable hostile work environment.

Joki II, 544 F. App'x at 681-82 (citations omitted).

The Ninth Circuit ruled the equal protection claim was timely, but it did not address the merits of the claim because that was not at issue on appeal. This court may rule on Defendants' current motion for summary judgment. See Herrington v. Cnty. of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993) ("the rule of mandate allows a lower court to decide anything not foreclosed by the mandate").

3 - OPINION AND ORDER

## III. Defendants' Motion to Strike Plaintiff's Declarations

Defendants move to strike portions of two declarations filed by Plaintiff. Defendants contend Plaintiff's allegations against defendant Galyn Carlile should be disregarded under the "sham affidavit rule."

### A. The Sham Affidavit Rule

This court may disregard sham affidavits that are filed "to create an issue of fact by contradicting the party's prior deposition testimony." Leslie v. Grupo ICA, 198 F.3d 1152, 1157 (9th Cir. 1999). Courts should apply the sham affidavit rule carefully to avoid conflicts with the "principle that the court is not to make credibility determinations" when resolving motions for summary judgment. Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (internal quotation marks omitted), cert. denied, 133 S. Ct. 2026 (2013). "In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." Id. (internal quotation marks omitted).

### B. Discussion

#### 1. Plaintiff's Declarations

In her first declaration, filed in 2011, Plaintiff alleged, "Almost every time I came into physical proximity of Carlile, he

4 - OPINION AND ORDER

would touch me. Particularly in meetings, he would grab my leg, grab my thigh, pinch my waist, pinch my thigh, or massage my shoulder. Most of the time there were other people present."

In her second declaration, filed this year, Plaintiff states Carlile first touched her at a meeting, grabbing her thigh. She states that at another meeting, he pinched her on the side hard enough to leave a bruise. She alleges that after the second incident, she immediately complained to defendant Cindy Hauser about Carlile's conduct, threatening to file a lawsuit if Carlile touched her again. Plaintiff alleges that three days later, Carlile told her he "could no longer meet with [her] in private."

### 2. Plaintiff's Declarations Are Not Sham Affidavits

Plaintiff failed to make these serious allegations against Carlile until she filed her response to Defendants' motions for summary judgment in 2011. Plaintiff did not raise the allegations during the investigation by the state Bureau of Labor and Industries, in her complaint here, or during her deposition when Defendants asked her to describe all the grounds for her claims against Carlile. For example, she did not mention these allegations in her detailed ten-page chronology, submitted with the complaint, although the chronology describes less serious incidents, such as Carlile's alleged pointing gesture at Plaintiff from across a room.

Plaintiff does not explain why she failed to raise these

5 - OPINION AND ORDER

allegations until Defendants moved for summary judgment. It is unclear how Plaintiff could have overlooked or forgotten about Carlile's alleged conduct, which was obviously relevant to the hostile environment claims. I conclude, however, Plaintiff's declarations do not expressly contradict her deposition testimony, so I will not strike them.

## LEGAL STANDARDS FOR SUMMARY JUDGMENT MOTIONS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. If the moving party shows that there are no genuine issues of material fact, then the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## LEGAL STANDARDS FOR EQUAL PROTECTION CLAIMS UNDER § 1983

"To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted). Courts generally apply the legal standards for discrimination claims under Title VII to equal protection claims under § 1983. See Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1112 (9th Cir. 1991),

superseded on other grounds as stated in Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1041 (9th Cir. 2005).

To establish a hostile environment claim based on sexual harassment, the plaintiff must show: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2004) (as amended).

The work environment must be perceived as abusive both subjectively and objectively. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). In determining whether the alleged conduct was sufficiently hostile or abusive, the court must examine all the circumstances, including the frequency of the alleged discriminatory conduct; its severity; whether the conduct was physically threatening or humiliating, or mere offensive utterances; and whether the conduct unreasonably interfered with an employee's work performance. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (per curiam). Simple teasing, offhand comments, or isolated incidents, unless very serious, do not show discriminatory changes in the terms and conditions of employment. Id. (citations omitted). Whether the workplace is objectively hostile is determined from the perspective of a reasonable person with the same fundamental

7 - OPINION AND ORDER

characteristics as the plaintiff. <u>Crowe v. Wiltel Commc'n Sys.</u>, 103 F.3d 897, 900 (9th Cir. 1996).

## DISCUSSION

### I. RCC Is Entitled to Summary Judgment

To hold RCC liable as a government entity, Plaintiff must present evidence that RCC acted "with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Bd. of Cnty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997). Unless RCC itself is at fault, it is not liable under § 1983 as an employer for the acts of its employees. <u>Id.</u> at 403.

Plaintiff has failed to present evidence that RCC, acting through its Board of Directors, had a policy, practice, or custom of permitting or ignoring sexual harassment. Nor has Plaintiff presented evidence that RCC deprived Plaintiff of her right to equal protection or ratified sex discrimination. RCC is entitled to summary judgment. <u>See</u> <u>Chudacoff v. Univ. Med. Ctr. of S. Nev.</u>, 649 F.3d 1143, 1151 (9th Cir. 2011).

### II. The Individual Defendants Other Than Carlile and Underwood Are Entitled to Summary Judgment

Defendants argue Plaintiff's claims against defendants Cindy Hauser, Michael Laam, and Peter Angstadt are time-barred because Plaintiff has failed to present evidence that these defendants committed acts contributing to a hostile environment within the statutory period, which began July 18, 2006. I agree.

8 - OPINION AND ORDER

### A. Michael Laam

Michael Laam supervised Plaintiff from January 2006 until she resigned in October 2006. Plaintiff contended Laam discriminated against her when he observed one of her classes after he received multiple complaints from students about her classroom conduct. See Joki I, at *3-4. But the Ninth Circuit ruled Laam's conduct was "an ordinary and reasonable response to student grievances," and that "there is no evidence that [Laam's observation of Plaintiff's class] was either a discrete act of discrimination or an act contributing to a hostile work environment." Joki II, at 681. Similarly, to the extent Plaintiff's claim against Laam is based on her workload, the Ninth Circuit ruled "the record does not demonstrate any disparity in workload." Id.

Because Plaintiff has not presented evidence Laam committed acts after July 18, 2006 that contributed to a sexually hostile work environment, he is entitled to summary judgment. Even if Laam's conduct before July 2006 is relevant, Plaintiff has not shown that he contributed to a sexually hostile work environment.

### B. Cindy Hauser

Cindy Hauser supervised Plaintiff for several years until January 2006. Plaintiff has not presented evidence that Hauser committed acts after July 18, 2006 that contributed to a sexually hostile environment.

9 - OPINION AND ORDER

Even if Hauser's pre-July 2006 conduct is relevant, Plaintiff has failed to present evidence that Hauser committed acts contributing to a sexually hostile environment. Plaintiff alleges Hauser did not properly handle her complaints. The record shows, however, that Hauser responded reasonably and properly to Plaintiff's complaints. For example, after Plaintiff complained in August 2004 about her working conditions and course assignments, Hauser promptly convened a meeting with Plaintiff, Carlile, Underwood, and Laam. During the meeting, Underwood apologized for an offensive email he had sent to Plaintiff. Plaintiff was given course releases to ease her workload. Plaintiff and Underwood also went through mediation to help them work together.

Hauser's efforts to resolve Plaintiff's complaints appeared to be successful. For example, in an email from February 2005, Plaintiff stated, "I think it's a good sign that Verne [Underwood] and I can talk about gender and the difference it can make in leading change." Plaintiff also stated that it was "good to reconnect" with Hauser.

In a later evaluation of Underwood, Plaintiff stated that she and Underwood were "working together to solve" problems, which "[spoke] volumes for both his professional integrity as well as his flexibility." Plaintiff concluded,

> Change is hard, but Verne and I--at least from my perspective--are really working through issues--

10- OPINION AND ORDER

> personal and professional--and we are(for the first
> time, I think) succeeding as a team. That's about the
> best thing I can say about anyone.

With these reports from Plaintiff, Hauser had no reason to believe Plaintiff considered herself the victim of a sexually hostile work environment.

Plaintiff now disclaims her favorable statements about Underwood, alleging Hauser forced her to make the statements "more palatable." Hauser denies Plaintiff's allegation, stating she never required Plaintiff to rewrite or fabricate communications. Hauser states Plaintiff told her several times, without solicitation, that Plaintiff and Underwood were getting along and Underwood was doing a good job as the department head. Plaintiff's emails speak for themselves.

Hauser is entitled to summary judgment.

### C. Peter Angstadt

Peter Angstadt was the president of Rogue Community College. "Generally, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability under 42 U.S.C. § 1983." Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001) (per curiam) (internal quotation marks omitted). To hold a supervisor liable under § 1983, there must be evidence of "either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."

11- OPINION AND ORDER

Id.

Plaintiff has not presented evidence that Angstadt was personally involved in any discriminatory conduct against Plaintiff, or condoned or overlooked such conduct. Instead, the record indicates Angstadt acted to prevent discrimination against Plaintiff.

Angstadt resolved Plaintiff's grievance about a 2005 disciplinary letter by removing the disciplinary letter from her file. As part of resolving Plaintiff's grievance, Angstadt wrote her a letter in January 2006, stating he wanted to assure Plaintiff that RCC would be "a safe, harassment-free place for you to work"; neither he nor RCC would permit retaliation or discrimination against her by any RCC employee; and if "any of these conditions are not met," Plaintiff should have the RCC Education Association file a Level II grievance on her behalf, stating her proposed remedies. Level II grievances would go directly to Angstadt for resolution.

Citing a prior draft of Angstadt's letter, Plaintiff complains Angstadt deleted a promise that she would not be supervised by Hauser or Carlile. But "[a]n aggrieved party is not entitled to the precise remedy that he or she would prefer." Oden v. N. Marianas Coll., 440 F.3d 1085, 1089 (9th Cir. 2006). RCC did replace Hauser as Plaintiff's supervisor with Laam, who previously had gotten along with Plaintiff. Angstadt is entitled

12- OPINION AND ORDER

to summary judgment.

### III. Galyn Carlile

Galyn Carlile was the executive dean and chief academic officer at RCC, supervising other deans, including Hauser.

#### A. Alleged Inappropriate Touching

Plaintiff's most serious allegations against Carlile are that he touched her inappropriately. In her response brief, Plaintiff argues these incidents were not isolated, quoting her first declaration, which alleges Carlile touched her inappropriately "almost every time" she "came into physical proximity of Carlile."

But Plaintiff's second declaration shows that the phrase "almost every time" means "twice." Here are the relevant allegations from the second declaration:

> 6. The <u>first time</u> Mr. Carlile touched me was in a meeting about the grant [for an online writing program]. Theresa Van Ravenhorst [an RCC instructor] was present and saw it. He grabbed me on the inside of my thigh, almost to my underwear. The <u>next time</u> he pinched me on my side. It was at an inservice shortly after we got the grant. He pinched me so hard he left a bruise.
>
> 7. I went into Cindy Hauser's office the next day and told her if he ever touched me again I would file a lawsuit.[1]
>
> 8. Three days later I was scheduled to have meeting

---

[1] Hauser denies Plaintiff ever complained to her about Carlile's alleged touching. Hauser states that she would have thoroughly investigated any such complaint of physical harassment. Carlile denies that these incidents occurred.

13- OPINION AND ORDER

> with Mr. Carlile. When I arrived Ms. Hauser was there, along with two other staff members. Mr. Carlile said that due to the allegations I had made, he could no longer meet with me in private. Ms. Hauser had clearly told him what I said, which was against college policies.

Joki 2d Decl. ¶¶ 6-8 (emphasis added). Although Plaintiff's first declaration implied Carlile often touched her inappropriately, Plaintiff's second declaration alleges Carlile did so a total of two times, and stopped when Plaintiff complained to Hauser. For purposes of ruling on this motion, I conclude Plaintiff's second declaration clarifies the first declaration on this issue. Plaintiff does not allege when these two incidents with Carlile occurred, but the record indicates that they must have occurred several years before 2006.

### B. Other Alleged Conduct

Plaintiff alleges that during her first evaluation after being hired by RCC as a full-time instructor in 1997, Carlile was "rude and condescending," and "talked about her earrings." Plaintiff alleges Carlile then asked her to teach online classes "as some kind of personal favor," and became "furious" when she refused his request the next day. Plaintiff "believe[s] that he intended to use me to set low pay rates for teaching online classes, and provide no development for such courses." Plaintiff also alleges that after she received a grant, Carlile punished her by moving her to a building without a working internet connection.

14- OPINION AND ORDER

In her first declaration, Plaintiff alleges Carlile "<u>always said things to me like</u>, 'just sit in the corner and be a good girl,' or 'be quiet, this is a discussion for the men.'" Joki 1st Decl. ¶ 18 (emphasis added). Plaintiff also alleges Carlile continued to make such comments after she kept her distance from him.

But her second declaration mentions only one "good girl" comment. In the second declaration, Plaintiff alleges that during a meeting about Plaintiff's Online Writing Lab, Carlile told her "to sit in the corner and be a good girl." Plaintiff does not provide a date for the meeting, but it must have been several years before July 2006. Because the first declaration does not directly conflict with the second declaration, I accept its allegations for purposes of resolving this motion only.

Plaintiff alleges Carlile was "very involved" in her grievances, "and was the driving force behind the reprimand that was withdrawn from my file." The reprimand concerned Plaintiff's alleged failure to notify Hauser that Plaintiff had left RCC during the last days of the 2005 summer term to attend to a family emergency. Plaintiff successfully grieved the disciplinary action against her, and Angstadt removed the letter of reprimand from her file.

The final allegation against Carlile concerns his alleged gesture, which the Ninth Circuit majority found contributed to a

15- OPINION AND ORDER

sexually hostile environment. Plaintiff describes the event:

> Even just prior to my resignation, Carlile behaved in a threatening manner. He saw me across the room at a faculty orientation on or about September 26, 2006. He pointed at his own eyes and then pointed those two fingers at me in a jabbing gesture that I knew meant he was displeased and intended to pressure me and make my work life difficult, just as he had been doing all along. His face was very red with anger.

Joki 1st Decl. ¶ 19.

Taking the evidence in the light most favorable to Plaintiff, I conclude that a reasonable jury could find Carlile's alleged conduct before the statutory period was sufficient to create a sexually hostile environment. Carlile's alleged pinching and touching should never occur in the workplace, especially because Carlile had supervisory authority over Plaintiff. Carlile's alleged "good girl" comments to Plaintiff were offensive and demeaning. Carlile is not entitled to summary judgment.

## IV. Verne Underwood

Verne Underwood was the chair of the Humanities Department. Plaintiff's only allegation against Underwood within the statutory period is that he shunned her after a faculty gathering in September 2006.

One of Plaintiff's principal allegations against Underwood concerns an email he sent in January 2004 to Plaintiff and other faculty members. The incident started with an email from Underwood including the phrase, "I was thinking of just me and

16- OPINION AND ORDER

Lutz." Plaintiff corrected Underwood by email, "Oops. I think that would be Lutz and I."[2]

Underwood responded, noting Plaintiff was wrong on the grammar. He then wrote, "You know, I've never made a grammatical error--I'm perfect (and white, and a male). I think your issue centers less around grammar and more around . . . are you ready . . . penis envy. You see, 'I' is a phallic shape, and 'me' is more like a vagina, so you immediately went for the symbol of male power, the penis, rejecting out of hand the femaleness of the genitive case." The email went not only to Plaintiff but to several others on the faculty.

Plaintiff initially did not complain about the email. In May 2004, plaintiff referred to Underwood in an evaluation as "truly a stellar department head" and called him "humorous."

In her first declaration, Plaintiff states she "did not make a big complaint" about Underwood's email, other than telling him it wasn't funny, "because at the time his comments to me seemed like small events not connected to my actual work." Joki 1st Decl. ¶ 36.

In August 2004, when Plaintiff complained to Hauser about her workload and the work environment, she also mentioned the penis-envy email. During the August 2004 meeting with Hauser and

---

[2]Plaintiff's correction was incorrect. The object of the phrase "thinking of" is "me," the objective pronoun.

17- OPINION AND ORDER

Plaintiff, Underwood apologized for the email, and underwent additional mediation with Plaintiff. It is undisputed Underwood never sent Plaintiff another offensive email. Plaintiff seemed to have reconciled with Underwood, repeatedly stating she and Underwood were working well together.

Plaintiff complains about Underwood's handling of her workload. As noted, Plaintiff has failed as a matter of law to show that her workload reflected gender-based disparity.

Plaintiff states the "language [Underwood] used to talk to and about women made clear to me that he objectified and did not respect them." Joki 1st Decl. ¶ 20. As examples, Plaintiff alleges Underwood called her the "Grammar Goddess" and the "department workhorse." She states the "workhorse" description "to me clearly implied that I was pulling more weight in the department than the other full time instructors, who were all male; but that he did not respect the value of my work." Joki 1st Decl. ¶ 20.

In her response brief, Plaintiff asserts in April 2006, Underwood stated at a dinner with Plaintiff and Lutz Kramer, another faculty member, "women never wrote anything worth reading, or did anything worth writing about." Pl. Resp. 9. Plaintiff's own chronology seems to contradict this allegation against Underwood, asserting Kramer made the offending statement. Compl., Ex. A at 6, ECF 1. At his deposition, Kramer testified

18- OPINION AND ORDER

he could have made the statement, explaining, "Plaintiff would be the first to recognize that as my type of humor; I use hyperbole quite often to draw out a point that's exactly the opposite of what I'm talking about." Moseley Aff., Ex. 677, at 11, ECF 141. On the other hand, Plaintiff's first declaration, submitted after her chronology, states <u>both</u> Kramer and Underwood "insisted that 'women never wrote anything worth reading, or did anything worth writing about.'" Joki 1st Decl. ¶ 41.

When this court evaluates alleged statements to determine whether they contributed to or created a sexually hostile work environment, the context of the statements is crucial. Here, three faculty members were talking over dinner before a scheduled event. The comment, whether made by Underwood or Kramer, arguably falls into the category of "simple teasing," which does not contribute to a sexually hostile environment. See <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficient for a sexually hostile environment claim).

Considering all of the allegations in the best light for Plaintiff, a reasonable jury could find Underwood's conduct contributed to a sexually hostile environment. Underwood is not entitled to summary judgment.

19- OPINION AND ORDER

## CONCLUSION

Defendants' motion for summary judgment (#217) is denied as to defendants Verne Underwood and Galyn Carlile, and granted as to the remaining defendants.

IT IS SO ORDERED.

DATED this __30__ day of September, 2014.

*[signature]*
OWEN M. PANNER
U.S. DISTRICT JUDGE

20- OPINION AND ORDER